No: **1244-15**

RECEIVED IN
COURT OF CRIMINAL APPEALS

NOV 1 8 2015

Abel Acosta, Clerk

ORIGINAL IN THE COURT OF
CRIMINAL APPEALS.
AUSTIN, TEXAS

JAMES THOMPSON
Appellant

FILED IN
COURT OF CRIMINAL APPEALS

NOV 18 2015

Abel Acosta, Clerk

V

THE STATE OF TEXAS
Appellee

APPEALED FROM 117th DISTRICT COURT, NUECES COUNTY, Tx.
ON APPEAL FROM THE 13TH DISTRICT
COURT OF APPEALS CORPUS CHRISTI
NUMBER 13-13-00558-CR

# PETITION FOR DISCRETIONARY REVIEW

JAMES THOMPSON
Appellant, Pro Se
TDCJ # 1889230
3060 FM 3514
Beaumont, Tx
77705

Oral Argument IS Requested

# TABLE OF CONTENTS

Identification of Interested Parties ...    ii

Index of Authorities ...    iii

Statement of the Case ...    1

Procedural History ...    2

Grounds for Review ...

First Ground for Review ...    3
If both the victims grandmother and mother are present during the initial outcry, and the State is unable to locate the mother should the trial court permit the grandmother to be the outcry witness and if so does this result in Petitioner being denied the right to confront his accuser? Did her testimony influence the jurors?

Reason for Review ... ARGUMENTS AND AUTHORITIES    3

Second Ground for Review ... In order to preserve error ...    7
Did the retroactive application of a Texas Statute that went into effect September 1, 2013 violate the constitutional provision against State "ex post facto" laws? Was admittance of the evidence unfairly prejudicial to the defense?

Reason for Review ... ARGUMENTS AND AUTHORITIES    7

Conclusion and Prayer ...    10

Certificate of Service ...    11

Appendix ...    12

13th Court of Appeals Opinion

i

# IDENTIFICATION OF INTERESTED PARTIES

Pursuant to Tex. R. App. P. 38.01 (a) the name and address of all interested parties are provided below therewith the court may at once determine whether they are disqualified to serve or should recuse themselves from participating in the decision of this case

Appellant/Defendant:
James Thompson

Trial Counsel for Appellant:
Mark Stolley
426 S. Tancahua St.
Corpus Christi, Tx. 78401

IRA MILLER
545 N. Upper Broadway, Suite 114
Corpus Christi, Tx. 78401

Trial Counsel for State:
Brittany Jensen, ADA
Eduardo Flores, ADA
Nueces County D.A. Office
901 Leopard St.
Corpus Christi, Texas 78401

Appellate Attorney for Defendant:
Stephen W. Byrne
711 N. Carancahua St., Ste 700
Corpus Christi, Texas 78401

Appellate Attorney for State
Mark Shurka, DA
Nueces County DA. office
901 Leopard St.
Corpus Christi Tx 78401

Presiding Judge

# Index of Authorities

BAIRD V STATE, 398 SW 3d 220, 228 TEXAS CRIM. App. 2013 . . . . . 7,8

BELTRAN V STATE, 728 SW. 2d 382,389 Tex Crim App 1987 . . . . . 9

BURKE V STATE, 371 SW 2d 252 Tex App 2011 . . . . . 9

CARMELL V Texas 120 S. Ct. 1620 . . . . . 7,8,9

CRAWFORD V WASHINGTON 541 US. 36 2005 . . . . . 5

GARCIA V STATE 792 SW2d 88,92 Tex Crim App 1990 . . . . . 3,6

Joachim V ~~STATE~~ CHAMBERS 815 SW 2d 234,240 Tex Crim App 1991 . . . . . 5

KING V STATE 953 SW 2d ~~266,~~ Tex Crim App 1997 . . . . . 10

MILES V STATE 918 SW 2d 511, 512 Tex Crim App 1996 . . . . . 9

MONROE V STATE 871 SW 2d 801, 805 TEX-App Houston [14th DIST] 1994 . . . . . 7

MOORE V STATE 169 SW 3d 467, 471 Tex-App TEXARKANA 2005 pet. refd . . . . . 5

MOTILLA V STATE 78 SW 3d 352,355 Tex Crim App 2002 . . . . . 3

PAWLAK V STATE 420 SW 3d 807, 811 Tex. Crim. App. 2013 . . . . . 10

PRIBLE V STATE 175 SW 3d at 733 . . . . . 10

SANDOVAL V STATE 409 SW 3d 259 (2013) . . . . . 10

STATE V HIGHT 907 SW2d 845 Tex. Crim App 1995 . . . . . 7

WEAVER V GRAHAM 450 US 24, 31, 101 S. Ct. 960, 670 LEd 2d 17 (1981) . . . . . 9

## TEXAS STATUTES

TEXAS CODE OF CRIMINAL PROCEDURE (T.C.C.P.) ART 1.02 (2014) . . . . . 8

ART 1.14 (b)2 (2014 . . . . . 8

ART 38. 072 (2013) . . . . . 3,5

ART 38.37 § 2 (a) 2013 . . . . . 2,7

TEXAS RULES OF APPELLATE PROCEDURE (T.R.A.P.) RULE 9.4 . . . . . 11

RULE 38.01 (a) . . . . . ii

RULE 44.2b . . . . . 3

RULE 66. 3(b) . . . . . 8

RULE 70.1 . . . . . 1

TEXAS RULES OF EVIDENCE (T.R.E.) RULE 404 (b) . . . . . 10

iii

IN THE COURT OF
CRIMINAL APPEALS
OF TEXAS

James Thompson
Appellant

V.

The State of Texas
Appellee

---

TO THE HONORABLE JUDGES of the COURT OF CRIMINAL APPEALS.
Comes Now, James Thompson, Appellant in the above styled and numbered cause, ProSe, pursuant to _Tex. R. App. P. 70.1_ and respectfully submits his PETITION FOR DISCRETIONARY REVIEW and in support thereof would show this Honorable Court the following:

## I.
### Statement Regarding Oral Argument

Oral argument is warranted because the Court of Appeals opinion fails to consider all issues and relevant evidence necessary to the disposition of appellants appeal.

## II.
### Statement of the Case

The appellant, Mr. Thompson, tried his case to a jury on a superseding indictment charging him with three counts of Agg. sexual assault of a child and one count of indecency with a child. Clerk's Record, pp 6-7.[1]

---

1. The Clerk's Record is hereafter referred to as "C.R."

THE State enhanced Mr. Thompson's indictment with his previous felony convictions for attempted aggravated sexual assault, indecency with a child and obscene wholesale promotion Id. Therefore the counts were enhanced to first and second degree felonies as a repeat felony offender. The jury found Mr. Thompson guilty on all four counts and the trial court assessed punishment at life on each of the four counts. C.R., pp 173, 193. Counts one, two and four were run concurrently. Id. A pretrial hearing occurred on September 3, 2013 in which the State proved up two of Mr. Thompson's prior convictions which were sexual crimes against children. Reporter's Record, Vol 2, p. 6-13[2]. The State proved up these convictions in order to present Mr. Thompson's prior crimes to the jury during the guilt-innocence phase of trial pursuant to C.C.P. Art. 38.37 §2(a). Id. at p14. The Defense later filed a motion in limine to exclude Mr. Thompson's prior bad acts, including the above prior convictions, at guilt-innocence. C.R. pp 140-142. On September 30, 2013 the trial court heard the motion in limine during a pretrial hearing in which the trial court heard arguments from both sides and overruled the Defenses' objections. R.R. Vol 3, pp. 5-30. The Appellant appealed his conviction to the 13 District Court of Appeals.

## III.
### Statement of Procedural History

The 13th District Court of Appeals affirmed appellants conviction on the 14th day of Aug. 2014. Due to Inneffective assistance of counsel this Court granted the appellant an Out-of-time Petition for Discresionary Review on

2. The Reporters Record is hereafter referred to as "R.R."

## ISSUE PRESENTED

If both the grandmother, Teresa Story and the mother, Kristianne Street, are present during the initial outcry, and the State is unable to locate the mother should the trial court permit the grandmother to be the outcry witness and if so does this result in Petitioner being denied the right to confront his accuser? Did her testimony influence the jurors?

## REASON FOR REVIEW
### ARGUMENT AND AUTHORITIES

The reviewing court must disregard non-constitutional error unless it affects the appellant's substantial rights, which are not affected if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect. Tex. R. App. P. § 44.2 (b); Motilla v State, 78 S.W. 3d 352, 355 (Tex. Crim. App. 2002)

In Mr. Thompsons case, Teresa Story was not the first person to whom J.J. made an outcry of sexual abuse, which on its face is contrary to T.C.C.P. Art. 38.072. The hearing held failed to determine the "time, content and circumstances" of the statement, no testimony or other evidence save State and Defense arguments, was presented. Most importantly the trial court refused to hear testimony from J.J. about what it was, and what it was not, that J.J. told his mother, Kristianne Street, when she pulled J.J. outside and spoke to him about the abuse. This occurred prior to both J.J. and his mother going back into the house and J.J. telling his grandmother, while Kristianne is in the room, about the abuse. The trial court made its ruling without receiving any evidence as to what J.J. told his mother, the first person to whom he made the Outcry See R.R. vol 3 p 269.

The Appeals Court agrees that "The Texas Court of Criminal Appeals has construed this language to mean that the proper outcry witness is the first adult person "to whom the child makes a statement..." citing Garcia v State, 792 SW 2d 88, 92 (Tex Crim App. 1990). Relying on Garcia the Court alledges its a similar case with similar facts. We respectfully disagree relying on the evidence before the Court at the time the ruling was made and would show the Court the following:

Prior to the ruling by the Court:

1) State Witness Jeremy Loftin was asked: (RR Vol 5 Pg 37)

    Q: Who was the first person that Jash had told about being assaulted

    A: It was going to be his mother Kristianne

Also testifying to his report which stated that Joshua was confused by Teresa, J.J.'s grandmother questioning him (RR vol 5 pg 41-42). And again testifying (RR vol 5 pg 45) "Q: Your testimony is that Kristianne, the mother, is the first person, based on your knowledge, that Joshua told about the alleged abuse, correct?
A: This is what they told me, yes"

2) States Witness Detective Michael Ramos stated "I took a telephone recorded interview from Kristianne Street. She was the initial outcry witness to what the victim had admitted to what was going on. This telephone conversation was recorded... and noted in our system and it is also included as evidence" (RR Vol 5 pg 101 and See also RR vol 5 pg 102) Again by the State: (RR vol 5 pg 104)
"Q: So based on that legal definition of the term "outcry", Detective Ramos, who did you understand the outcry witness to be?
A: Kristianne Street, the mother.
Only after sufficient leading did the detective agree with the State (RR vol 5 pgs 101-105)

3) The State, by Ms Jensen, also concedes both were told, both were in the car. (RR vol 5 pg 174)

4) State Witness, Sergeant Paredes, stated when asked: (RR Vol 5 pg 177) By Ms Jensen,
"Q: And based on the investigation you conducted do you know who it was that Josh told first about what had happened?
A: ...he mentioned first to the mother.

5) During cross examination the Defense raised the theory that there was a concerted effort to pick the outcry witness because Kristianne Street had issues (RR vol 5 pg 187)
"Q: So you knew - Kristianne Street to be the person, as you state, with issues?
A: Yes
Q: Now, wasn't there a concerted effort on the part of the Police Department to pick who the outcry witness would be in this case?
A: I told you who it was. He first -- the child first told his -- it was his mother and then he told his grandma.

6) States Witness, Teresa Street, spoke specifically that Kristianne Street "took him outside and they were gone I guess maybe ten minutes..."

7) At this late point the Court held the hearing to determine who the proper outcry witness was (RR Vol 5 pg 258, 259)

Therefore, when the trial court made its ruling, there was ample evidence before the Court to suggest that Kristianne Street was in fact the first person to whom the complainant described the sexual abuse and ample evidence that Kristianne Street was present along with the child and grandmother when the complainant described the sexual abuse in detail.

Article 38.072 also requires that "the trial court finds.. that the statement is reliable based on time, content and circumstances of the statement." T.C.C.P. Art 38.072, §2(b)(2). The statute is mandatory, and the trial court commits error when it fails to analyze or apply the law correctly constituting a clear abuse of discretion Joachim v Chambers 815 SW 2d 234, 240 (Tex Crim App 1991)

"The only proper basis for the trial Court to exclude the evidence in this case is that provided in the Texas Rules of Evidence and the only proper basis for an appellate Court to reverse a trial Courts decision is when the record demonstrates that the trial court has abused its discretion.

~~Testimony fact an order of emotion that the law~~ REDACTED J.T.

## HARMFUL ERROR ANALYSIS

"Testimony" in turn is typically a "solemn declaration or affirmation made for the purpose of establishing or proving some fact." Moore v State 169 SW 3d 467, 471 (Tex. App. Texarkana 2005, pet.ref'd) An accusser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not. Kristianne Street as the first person to whom the child made a statement and as a person who made a report to CCPD is a witness against the defendant.

The Sixth Amendment of the United States Constitution provides "in all criminal prosecutions, the accused shall enjoy the right... to be confronted with the witnesses against him Crawford v Washington 541 U.S. 36 (2005)

The trial court agreed that it needed to hear what J.J. told his mother Kristianne Story, about the abuse. However the next morning made its ruling without testimony and ultimately Teresa Story told the outcry J.J. told to her See RR vol 3 p 269 and RR Vol 6 pp 9-10. the evidence thus constituted inadmissable hearsay.

The record must then be consulted to determine did the testimony of Teresa Street influence the jurors. First and foremost a "Forensic Interview" is done by a person who is specifically trained to interview children in a non-leading, non-suggestive and unbiased manner. You go through training to do that and the purpose of it is to find out whether or not something has happened to the child," Teresa Street has no forensic interview training Why is this important?

## THE MOST IMPORTANT SAFEGUARD

1) The most important safeguard, of course, hearsay statements are limited to witnesses who are the first person to whom the child reports the events. As noted by Justice Clinton in his dissent in GARCIA, that requirement represents a "balance between the necessity of introducing the child's statements through an adult witness and the necessity of avoiding the dangers in hearsay itself." Id at 92 Clinton wrote that:

> "The restriction to the first person greatly reduces the hearsay dangers peculiar to children ... they nevertheless remain more vulnerable to suggestion, unintentional or otherwise, and are more easily influenced by the various authority figures involved.. By limiting.. to the child's first conversation.. the child's initial disclosure is more likely a self-motivated account.. untainted by the subtle influences of subsequent interrogators. Each time the child relates the story to a new adult, the risks that the story may be altered or nuances added to please the listener multiply..."

2) The record reflects there was no trauma noted by the SANE examiner. However Officer Mendoza stated he was told by Teresa Street there was trauma (RR Vol 5 p 167) Reasonably concluding Teresa Street had a propensity to exaggerate the allegations

3) Teresa Street also gave new or additional details to Sergeant Paredes. For example it became alleged the child showered with the defendant (RR Vol 5 Pg 172)

4) Teresa Street stated that James Thompson became aware of Kristianne Street stealing drugs and money and confronted Kristianne (RR Vol 6 pp 35-36) prior to the outcry. Hence the defenses position that Kristianne had a motive to influence her child possibly even manipulate the outcry. The appellant had a constitutional right to confront this witness who spoke to the child alone for at least ten minutes.

5) Teresa Street testified, over objection, to the character of both the child and the defendant as well as to having influence and authority over Joshua.

In conclusion, Teresa Streets testimony damaged both the character and implied to the truth of J.J.'s testimony against the appellant. Kristianne Street had a one-on one conversation, with no other person around, and the defendant had no ability to attest or to examine what she may have suggested to the child. The Court of Appeals erred by holding the court did not err designating Teresa as the outcry witness or by proposing her testimony did not influence the jury thus did not harm the appellant!

## ISSUE PRESENTED FOR REVIEW...IN ORDER TO PRESERVE ERROR

Did the retroactive application of a Texas Statute that went into effect September 1, 2013 violate the constitutional provision against "ex post facto" laws? Was admittance of the evidence unfairly prejudicial to the defense?

## REASON FOR REVIEW
## ARGUMENTS AND AUTHORITIES

The Court should assume that every word of Art 38.37 was meant to serve a discrete purpose that should be given effect Baird v State 398 SW 3d 220, 228 (Tex. Crim. App. 2013). Carmell v Tx, 120 S. Ct 1620

An amendment to a Texas Statute that went into effect September 1, 2013 was incorrectly applied. Art 38.37, § 2(a) (West, Westlaw through 2013 3d C.S.)(T.C.C.P.) provides:

> Notwithstanding Rules 404 and 405, Texas Rules of Evidence, and subject to Section 2-a, evidence that the defendant has committed a separate offense described by Subsection (a)(1) or (2) may be admitted in the trial of an alleged offense described by Subsection (a)(1) or (2) for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant.

In its opinion the Court of Appeals concedes (P.8 N3) it became effective less than a week before appellants case began, an incorrect conclusion per legislative mandate, regarding the commencement of a criminal proceeding In its entirety the Legislature mandated: "The change in law made by this Act applies to the admissibility of evidence in a criminal proceeding that COMMENCES [emphasis added] on or after the effective date of this Act. The admissibility of evidence in a criminal proceeding that COMMENCES BEFORE THE EFFECTIVE DATE of this Act is covered by the law in effect when the proceeding commenced and the former law is continued in effect for that purpose" Id.

### COMMENCEMENT

Generally a criminal action COMMENCES when an indictment, information, or complaint against the defendant is filed in Court..

Monroe v State, 871 SW 2d 801, 805 (Tex-App Houston [14 Dist.]1994 overruled on other grounds, State v Hight 907 SW 2d 845 (Tex Cr. App 1995)

A "criminal proceeding" is the regular and orderly progression of a lawsuit including all acts and events between the time of commencement and the entry of judgement" ~~Anderson County~~. T.C.C.P. ART 1.02

Texas Code of Criminal Procedure Art 1.02 (2014) Governs all "criminal proceedings", which establishes that any article of the Code of Criminal procedure that follows Art 1.02 does in fact "commence" or begin a criminal proceeding. Which differs entirely from the commencement of a trial as described by the State law of charging instruments:

Texas Code of Criminal Procedure Art. 1.14 (b) 2 "trial commences on the date when a jury is seated and sworn"

Similarly T.C.C.P. Art. 15.01 is a criminal proceeding governed by the Code of Criminal Procedure thereby a "criminal proceeding" could even commence at "WARRANT OF ARREST."

The court assumes that every word is meant to serve a discrete purpose that should be given effect. The Court may also consult standard dictionaries to determine the common usage of a word... If having implemented these basic canons of statutory construction, the court finds that the statutory language is plain on its face, the court is ordinarily constrained to adhere to the plain import of that statutory language, regarding it as the definitive indicium of the legislature intent. Baird v State, 398 SW 3d 220 (Tx.Cr.Ap 2013) The Court may not resort to extratextual factors to construe statutory language otherwise than its plain import.

The Court of Appeals in its holding has thus decided an important question of State or Federal Law that, possibly, has not been but should be decided by the Court of Criminal Appeals. Pursuant to Tex. Rules of App. Proc. 66.3(b) the appellant's petition for Discretionary Review should be granted.

## Harmful Analysis

The Supreme Court in its opinion by Justice Stevens similiarly reviewed an Amendment to a Texas Statute in its examination of Carmell v Texas, 120 S. Ct. 1620.

An amendment to a Texas Statute that went into effect ___, authorized ___ ... the previous statute required ___ ... The question presented is whether that amendment may be applied in a trial for offenses committed before the amendments effective date without violating the constitutional prohibition against State "ex post facto" laws...

N2 "Ordinarily, when evidence that should have been excluded is erroneously admitted against a defendant, the trial court's error is remedied on appeal by reversing the conviction and remanding for a new trial" See e.g. _Miles v State_, 918 S.W. 2d 511, 512 (Tex. Crim. App 1996); _Beltran v State_, 728 Sw 2d 382, 389 (Tex. Crim. App 1987): A trial court's failure to comply with the requirements of 38.07, by contrast, results not in a remand for a new trial, but in the reversal of conviction and remand for entry of an acquittal.

The retroactive application of the amendment in order to present evidence and obtain a conviction and a life sentence for the defendant by the State not only violates the Legislative mandate but is also in itself prejudicial as the amendment was critical to the State as its argument for admittance so declares, giving the State an unfair advantage.

_Carmell_, 529 US 514 (c) A law reducing the quantum of evidence required to convict is as grossly unfair as retrospectively eliminating an element of the offense... or lowering the burden of proof. In each instance the government refuses, after the fact, to play by its own rules, altering them in a way that is advantageous only to the State, to facilitate an easier conviction.

Like _Carmell_, the amendment does not merely set an effective date but alters the Rules of Evidence in effect at the time the appellant allegedly committed the sexual offenses. _Art. 38.37 (2011)_ required that the victim of the alleged offense be the "same victim" of the current offense at hand. _Burke V State_, 371 Sw 2d 252 (Tex App 2011)

The critical question [ for an ex post facto violation ] is whether the law changes the legal consequences of acts completed before its effective date _Weaver v Graham_ 450 U.S. 24, 31, 101 S. Ct. 960, 670 LEd 2d 17 (1981)

Joseph Story, for example in writing, for example in writing on the Ex Post FACTO clause stated: The general interpretation has been, and is ... that prohibition reaches every law ... whereby different, or less evidence is required to convict an offender...

## USE OF Extraneous Offenses

An extraneous offense may be admissable to prove the culpable mental state required for the charged offense if the required intent cannot be inferred from the act itself, or if the accused presents evid to rebut that inference; however when the States direct evidence shows the intent element of the crime and that evidence is uncontradicted by the defense and not undermined by cross-examination of the States witnesses, evidence of extraneous offenses to show intent is in admissable. Texas Rules of Evidence 404 (b), Sandoval v State, 409 SW 3d 259 (2013)

The State through its many witnesses did not have need of any extraneous offenses to prove any element, as it produced sufficient witness testimony to do so. If the credibility of J.J. rests solely upon previously committed offenses as the State alledges, then the evidence obviously "impress[ed] the jury in some irrational yet indelible, way" Pribte, 175 SW3d at 733 and as the Texas Court of Criminal Appeals has held the extraneous offense of "sexually related bad acts and misconduct involving children are [and in this case were] inheretently inflammatory" Pawlak v State, 420 SW 3d 807, 811 (Tex Crim. App. 2013); King v State, 953 SW 2d 266 (Tex Crim App 1997)

In summary, Allowing the State to admit impeachment evidence that was otherwise inadmissable or; admits improper theories of law and testimony that causes the jury to misuse it, by considering it for its truth. Consequently any probative value is substantially outweighed by its prejudicial effect. Admitting such evidence has an injurious effect on the jury's verdict. The Court erred in holding otherwise and in setting precedent allowing retroactive application of a statute in violation of "ex post facto" and the due process of the United States Constitution and Texas Constitution denying the defendant a fair trial.

## PRAYER

For the foregoing reasons, the appellant respectfully requests that the Court of Criminal Appeals reverse Mr. Thompson's conviction on all counts.

Respectfully Submitted,

_James Thompson_

James Thompson, Appellant
TDCJ # 1897230
Stiles Unit
3060 FM 3514
Beaumont, Tx 77705

## Certificate of Service

I certify that on November 11, 2015 the foregoing petition for appellant was served on Court of Criminal Appeals by U.S. Mail, first class postage prepaid by placing said petition in the unit mailbox.

_James Thompson_

## Certificate of Compliance

In compliance with Texas Rules of Appellate Procedure 9.4. I certify the number of pages is 15 pages or less.

_James Thompson_

# APPENDIX

## 13th Court of Appeals Opinion



STATE'S
EXHIBIT

ß



## NUMBER 13-13-00558-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

| | |
|---|---|
| **JAMES THOMPSON,** | **Appellant,** |
| **v.** | |
| **THE STATE OF TEXAS,** | **Appellee.** |

### On appeal from the 117th District Court
### of Nueces County, Texas.

## MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Perkes and Longoria
### Memorandum Opinion by Justice Longoria

By two issues, appellant James Thompson challenges his conviction of three counts of aggravated sexual assault of a child (Counts I-III) and one count of indecency with a child (Count IV). *See* TEX. PENAL CODE ANN. §§ 22.021(a)(1)(A), (2)(B), 21.11(a) (West, Westlaw through 2013 3d C.S.). Count Four was enhanced to a first-degree felony by two prior felony convictions. The case was tried to a jury, which returned a verdict of

guilty on all counts. The trial court assessed punishment on all counts at life imprisonment in the Texas Department of Criminal Justice—Institutional Division, court costs, and no fine. *See id.* § 12.42(c)(2)(A)(i) (providing for mandatory life sentence for habitual offenders subsequently convicted of certain offenses). The trial court ordered the sentence on Count III to run consecutively to the sentences on the other counts. We affirm.

## I. BACKGROUND

J.J., the ten-year-old minor complainant in this case, lived in an apartment with his grandmother Teresa, her roommate Brenda Johnson, and Johnson's son, Robert McGorlick.[1] Teresa testified that J.J.'s mother, Teresa's daughter K.S., would occasionally live with them. Teresa described K.S. as addicted to heroin and "constantly in and out of the hospital and basically living on the street." In November or December of 2012, McGorlick entered a romantic relationship with appellant, a co-worker he met while working at Denny's. Teresa testified that appellant stayed over in the apartment "a few times."

After a hearing outside the presence of the jury, and over appellant's objections, the trial court judge designated Teresa as the outcry witness under article 38.072, § 2(a) of the code of criminal procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(a) (West, Westlaw through 2013 3d C.S.). According to Teresa, on February 12, 2013, J.J. and K.S. were having an argument and J.J. "just really got out of control." K.S. and J.J. went outside for approximately ten minutes. When they returned, K.S. told J.J. to tell Teresa "what you told me." In response to Teresa's extensive questions, J.J. told her that

---

[1] We will refer to the minor complainant and his mother by their initials to protect the complainant's privacy.

2

appellant had touched J.J.'s penis and that he had inserted his penis into J.J.'s anus. J.J. told Teresa that this occurred both at Teresa's apartment and at appellant's apartment in Robstown, Texas. There was no evidence in the record regarding the specifics of what J.J. told K.S. during the ten minutes they were outside the apartment.

J.J. also testified at trial. J.J. testified to all of the information that Teresa's testimony contained plus additional details and instances of abuse. J.J. also told the jury that appellant twice touched J.J.'s penis with his mouth and once forced J.J. to "suck on" appellant's penis. During one of J.J.'s visits to appellant's apartment, appellant inserted his penis into J.J.'s anus while J.J. lay naked on his hands and knees on appellant's bed. J.J. described witnessing appellant place lotion on appellant's penis before inserting it. At another time, appellant inserted his finger into J.J.'s anus. J.J. also told the court that he observed appellant and McGorlick having sexual contact, but that they apparently were not aware that J.J. was watching.

## II. OUTCRY TESTIMONY

By his first issue, appellant challenges the trial court's decision to permit Teresa to testify regarding what J.J. told her because she was not the proper outcry witnesses. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(a).

### A. Standard of Review and Applicable Law

In prosecutions for certain offense against children, "[a]rticle 38.072 allows the first person to whom the child described the offense in some discernible manner to testify about the statements the child made." *Yebio v. State*, 87 S.W.3d 193, 198 (Tex. App.—Texarkana 2002, pet. ref'd). Article 38.072 acts as an exception to the hearsay rule. *Reyes v. State*, 274 S.W.3d 724, 727 (Tex. App.—San Antonio 2008, pet. ref'd).

3

We review the decision to admit an outcry statement for abuse of discretion. *Robinett v. State*, 383 S.W.3d 758, 761 (Tex. App.—Amarillo 2012, no pet.). "A trial court has broad discretion in determining the admissibility of the proper outcry witness. The exercise of that discretion will not be disturbed unless a clear abuse of that discretion is established by the record." *Reyes*, 274 S.W.3d at 727 (citing *Garcia v. State*, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990) (en banc)); *accord Hanson v. State*, 180 S.W.3d 726, 729 (Tex. App.—Waco 2005, no pet.). Article 38.072 requires that "the statements be made: (1) by the child against whom the offense was allegedly committed; and (2) to the first person, eighteen years of age or older, to whom the child made a statement about the offense." *Reyes*, 274 S.W.3d at 727. The Texas Court of Criminal Appeals has construed this language to mean that the proper outcry witness is the first adult person "to whom the child makes a statement that in some discernible manner describes the alleged offense. . . . [T]he statement must be more than words which give a general allusion that something in the area of child abuse was going on." *Garcia*, 792 S.W.2d at 91; *see Castelan v. State*, 54 S.W.3d 469, 475 (Tex. App.—Corpus Christi 2001, no pet.) (applying *Garcia*). In other words, the proper outcry witness is the first adult, other than the accused, to whom the complainant told the "how, when, and where" of the offense. *Hanson*, 180 S.W.3d at 729. Article 38.072 also requires that "the trial court finds, in a hearing conducted outside the presence of the jury, that the statement is reliable based on time, content, and circumstances of the statement." TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(b)(2). The statute is mandatory, and the trial court commits error if it overrules a hearsay objection without first conducting the hearing. *Moore v. State*, 233 S.W.3d 32, 35 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

4

## B. Analysis

Appellant argues that the trial court abused its discretion when it designated Teresa as the outcry witness under section 2 of article 38.072 without inquiring into what J.J. told K.S. before he spoke to Teresa. Appellant asserts that K.S. was likely the proper outcry witnesses because K.S. told J.J. to tell Teresa "what you told me," which indicates that J.J. communicated more than a "general allusion that something in the area of child abuse was going on." *See Garcia*, 792 S.W.2d at 91.

The State responds that the trial court did not abuse its discretion because there was sufficient evidence for the trial court judge to find that Teresa was the first person to whom J.J. communicated more than a "general allusion" of abuse. The State argues that the Texas Court of Criminal Appeals affirmed the trial court's designation of the outcry witness in *Garcia*, a case with similar facts. *See id.* at 91–92. The seven-year-old complainant in that case first spoke to her first grade teacher about the abuse for approximately the same amount of time that J.J. spent with K.S. outside of Teresa's apartment. *Id.* at 90. The teacher testified generally regarding what the complainant told her, but when the State attempted to elicit testimony about the specifics of the child's statements, the defense successfully objected on hearsay grounds. *Id.* The State later successfully moved to designate as the outcry witness an employee of the Texas Department of Human Services who investigated the allegations. *Id.* at 91. The Texas Court of Criminal Appeals upheld the trial court's decision because there was evidence that the statements to the counselor were extensive and the Court was unable to determine from the record what the complainant told the teacher. *Id.* The *Garcia* court supported its holding in part with the fact that the defendant prevented the teacher from

5

testifying regarding the specifics of the child's statements to her by objecting, and the defendant also declined to recall the teacher to the stand and elicit testimony regarding what the child told her, which could have rebutted the predicate the State laid for designating the investigator as the proper outcry witness. *Id.*

After thorough consideration of the record, we conclude that appellant has not demonstrated that the trial court abused its discretion. Even though the trial court did not know the content of J.J.'s statements to K.S. during those ten minutes, there was sufficient evidence for the trial court to conclude that Teresa was the first adult to whom J.J. gave more than a "general allusion" of abuse. The trial court knew from Teresa's testimony that she talked with and questioned J.J. for a much longer period of time than the ten minutes that K.S. and J.J. were outside of the apartment. Teresa testified that she had a much stronger and more open relationship with J.J. than K.S. because Teresa was his primary caregiver. More importantly, Teresa was the first adult able and willing to testify to whom J.J. made an outcry. Teresa testified without contradiction that K.S. chose not to attend the trial because "[s]he can't handle it. She would fall apart." The State and appellant's counsel told the court that both police and appellant's investigator were unable to locate K.S. *See Foreman v. State*, 995 S.W.2d 854, 859 (Tex. App.— Austin 1999, pet. ref'd) (holding that it was not an abuse of discretion to designate the child's counselor as the outcry witness when the child's parents testified they could not remember the outcry). Furthermore, the trial court judge did intend to have J.J. testify regarding what he told K.S. On the day of the hearing, the State requested that the trial court permit J.J. to deliver all of his testimony at once so he would not have to enter the courtroom twice, but appellant objected because the State had not yet passed the witness

6

who had been testifying when the court recessed the day before. Appellant thus gave up an opportunity to question J.J. regarding the specifics of what he communicated to K.S. about the abuse. *See Garcia*, 792 S.W.2d at 91–92 (factor in affirming the trial court's designation of outcry witness was the defendant's failure to take advantage of an opportunity to question the witness who defendant alleged was the proper outcry witness regarding the nature of the child's statements); *Hayden v. State*, 928 S.W.2d 229, 231 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd) (holding that the trial court did not abuse its discretion by designating a CPS caseworker as outcry witness even though the complainant first told the school counselor about the abuse because there was no evidence about the specifics of the child complainant's statements to the counselor). In sum, we conclude from all the foregoing that appellant has not shown that the record establishes that the trial court clearly abused its discretion in permitting Teresa to testify as the outcry witness.[2] *See Garcia*, 792 S.W.2d at 91–92; *Foreman*, 995 S.W.2d at 859; *Hayden*, 928 S.W.3d at 231. We overrule appellant's first issue.

### III. EXTRANEOUS OFFENSES

By his second issue, appellant argues that the trial court abused its discretion by admitting certified copies of the judgments of appellant's two prior convictions for attempted aggravated sexual assault of a child and indecency with a child. Appellant

---

[2] Alternatively, even if the trial court did abuse its discretion in designating Teresa as the outcry witness, the error was harmless because J.J. later testified at length regarding the abuse. J.J.'s testimony included all of the details contained in Teresa's description of his statements to her and several additional details. Generally, admission of inadmissible evidence is harmless error if the same evidence is introduced without objection from another source. *See Moore v. State*, 999 S.W.2d 385, 402 (Tex. Crim. App. 1999); *see also Martinez v. State*, No. 04-99-00051-CR, 2000 WL 84484, at *3 (Tex. App.—San Antonio Jan. 26, 2000, no pet.) (mem. op., not designated for publication) (concluding that even if the trial court designated the wrong person as outcry witness under article 38.072, the error was harmless because the child complainant testified to the same facts as the outcry witness).

7

alleges that the court erred in admitting the judgments because the potential for unfair prejudice substantially outweighed their probative value. *See* TEX. R. EVID. 403.

## A. Standard of Review and Applicable Law

Article 38.37, § 2(a) of the Texas Code of Criminal Procedure provides:

> Notwithstanding Rules 404 and 405, Texas Rules of Evidence, and subject to Section 2-a, evidence that the defendant has committed a separate offense described by Subsection (a)(1) or (2) may be admitted in the trial of an alleged offense described by Subsection (a)(1) or (2) for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant.

TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(a) (West, Westlaw through 2013 3d C.S.). Texas courts have held under previous versions of the statute[3] that even where it makes evidence of extraneous acts admissible, the evidence is still subject to exclusion under the Rule 403 balancing test. *Colvin v. State*, 54 S.W.3d 82, 84 (Tex. App.—Texarkana 2001, no pet.) (collecting cases). Rule 403 provides that "relevant evidence may still be excluded if its probative value is substantially outweighed by danger of unfair prejudice, confusion of the issues, misleading the jury, considerations of undue delay, or needless presentation of cumulative evidence." *McNeil v. State*, 398 S.W.3d 747, 756 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). The trial court is required to conduct the Rule 403 test on proper objection by either party. *Colvin*, 54 S.W.3d at 85 (citing *Rojas v. State*, 986 S.W.2d 241, 250 (Tex. Crim. App. 1998)).

"Whether evidence is admissible under Rule 403 is within the sound discretion of the trial court." *Burke v. State*, 371 S.W.3d 252, 257 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). A Rule 403 analysis "favors admissibility of relevant evidence, and the

---

[3] The Legislature added Section 2 to article 38.37 in the 2013 Regular Session, and it became effective less than a week before appellant's case began. *See* Act of May 17, 2013, 83rd Leg., R.S., ch. 387, § 1, (codified at TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2 (West, Westlaw through 2013 3d C.S.)).

presumption is that relevant evidence will be more probative than prejudicial." *Booker v. State*, 103 S.W.3d 521, 533 (Tex. App.—Fort Worth 2003, pet. ref'd). On review of a Rule 403 analysis, we will "reverse the trial court's judgment rarely and only after a clear abuse of discretion because the trial court is in a superior position to gauge the impact of the relevant evidence." *Freeman v. State*, 230 S.W.3d 392, 404–05 (Tex. App.—Eastland 2007, pet. ref'd) (internal quotation marks omitted); *see Booker*, 103 S.W.3d at 534. A Rule 403 analysis includes the following non-exclusive factors: "(1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence." *Prible v. State*, 175 S.W.3d 724, 733 (Tex. Crim. App. 2005).

### B. Discussion

Appellant first addresses the factor of the probative value of the evidence. "'[P]robative value' refers to the inherent probative force of an item of evidence—that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation." *Gigliobianco v. State*, 210 S.W.3d 637, 641 (Tex. Crim. App. 2006). Appellant argues that informing the jury of the mere fact that he pleaded guilty to the charges of indecency with a child and attempted aggravated sexual assault of a child sixteen years before trial does not make any fact more or less probable regarding the charged offenses. Appellant reasons that "there was no evidence presented that [appellant's] conduct in either of the two convictions was similar in nature to the sexual abuse of J.J.," so there was an unacceptable danger that the jury would conclude based on those two convictions that appellant is a pedophile and "has a history of acting on his pedophilic predisposition." In other words, admitting evidence of the

9

convictions was error because the convictions are only probative of appellant's propensity of committing offenses of this type, but are not probative of his culpability for this particular offense. We disagree.

Appellant's argument could have some force in a case where the Rule 404 ban on character-conformity evidence applied, but we reject his assertion in this case because the Legislature has determined that evidence of similar extraneous offenses is admissible "[n]otwithstanding Rules 404 and 405, Texas Rules of Evidence" for precisely these matters in the cases where article 38.37 applies. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(a) (providing that certain extraneous offense evidence is admissible "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant"). We must, if possible, give full effect to the Legislature's enactments. *See Baird v. State*, 398 S.W.3d 220, 228 (Tex. Crim. App. 2013) (appellate courts must assume that every word in a statute "was meant to serve a discrete purpose that should be given effect"). We agree, however, that the convictions' remoteness in time somewhat diminishes their probative value. *See Newton v. State*, 301 S.W.3d 315, 320 (Tex. App.—Waco 2009, pet. ref'd) (concluding that a twenty-five year-old extraneous offense was admissible to rebut the defensive theory of fabrication but that "the remoteness of the extraneous-offense evidence significantly lessens it probative value"). Nevertheless, this factor weighs in favor of admissibility.

We next turn to whether the evidence has the potential "to impress the jury in some irrational, yet indelible, way." *See Prible*, 175 S.W.3d at 733. The Texas Court of Criminal Appeals has held that "sexually related bad acts and misconduct involving children are

10

inherently inflammatory." *Pawlak v. State*, 420 S.W.3d 807, 811 (Tex. Crim. App. 2013). However, the language of Rule 403 "does not allow a trial court to exclude otherwise relevant evidence when that evidence is merely prejudicial." *Id.* Rule 403 only addresses "unfair" prejudice, which refers "to relevant evidence's tendency to tempt the jury into finding guilt on grounds apart from proof of the offense charged." *State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005). In the present case case, the certified copies of the judgments informed the jury of appellant's previous convictions, but the State did not provide to the jury any details of the circumstances surrounding the old offenses. The evidence in this case is "much less serious and potentially inflammatory" than the multiple acts of sexual abuse that the State alleged and that J.J. and Teresa described in graphic detail. *See Rivera v. State*, 269 S.W.3d 697, 706 (Tex. App.—Beaumont 2008, no pet.) (holding that extraneous evidence of "touching, kissing, showing of pornographic materials, and an unsuccessful attempt to touch [the complainant's] penis" was less prejudicial and potentially inflammatory than the charged offenses that alleged "multiple instances of oral and anal penetration over a period of approximately two years"). This factor also weighs in favor of admissibility.

We now turn to the State's need for the evidence. The State argues that appellant's trial strategy "challenged the credibility of [J.J.] and stressed the lack of corroborating evidence," and the State needed this evidence to rebut those theories. The State asserts that its need was especially great because the case turned in large part on whether the jury found J.J. or appellant's testimony to be credible. We agree.

The Texas Court of Criminal Appeals has explained:

> sexual assault cases are frequently "he said, she said" trials in which the jury must reach a unanimous verdict based solely upon two diametrically

11

different versions of an event, unaided by any physical, scientific, or other corroborative evidence. Thus, the Rules of Evidence, especially Rule 403, should be used sparingly to exclude relevant, otherwise admissible evidence that might bear upon the credibility of either the defendant or complainant in such "he said, she said" cases.

*Hammer v. State*, 296 S.W.3d 555, 561–62 (Tex. Crim. App. 2009). Appellant even argues in his brief that there was no corroborating evidence for the testimony of J.J. and Teresa and that introducing the convictions "effectively destroyed the credibility" of his defensive theories that the testimony of J.J. was not credible and that the Teresa was attempting to shield McGorlick from prosecution for the abuse. Based on the foregoing, we agree that the State's need for the evidence was strong. *See id.*

In sum, after considering all of the Rule 403 factors, and bearing in mind that Rule 403 should be "used sparingly to exclude relevant, otherwise admissible evidence" in these types of cases, *see id.* at 562, we conclude that appellant has not established that the trial court committed a "clear abuse of discretion" when it concluded that the danger of unfair prejudice did not substantially outweigh the probative value of the evidence. *See Freeman*, 230 S.W.3d at 404–05 (appellate courts will not reverse a trial court's Rule 403 determination absent a "clear abuse of discretion"). We overrule appellant's second issue.

## IV. Conclusion

We affirm the judgment of the trial court.

NORA L. LONGORIA
Justice

Do not publish.
Tex. R. App. P. 47.2(b).

Delivered and filed the
14th day of August, 2014.

12